UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NILOUFAR EBADI, <br><br>                Plaintiff, <br><br>         -against- <br><br> DIAMOND STANDARD INC. and <br> DIAMOND STANDARD LLC, <br><br>             Defendants. | Case No. 1:24-cv-00103 (JLR) <br><br> **OPINION AND ORDER** |

JENNIFER L. ROCHON, United States District Judge:

Plaintiff Niloufar Ebadi ("Plaintiff" or "Ebadi") brings this action against Diamond

Standard Inc. and Diamond Standard LLC (collectively, "Defendants" or "Diamond Standard"),

alleging employment discrimination and retaliation under federal, New York State, and New

York City law. Defendants moved for summary judgment on all of Plaintiff's claims pursuant to

Federal Rule of Civil Procedure ("Rule") 56. Plaintiff opposed the motion. For the following

reasons, the Court GRANTS Defendants' motion for summary judgment and dismisses all of

Plaintiff's claims.

## BACKGROUND

The following facts are drawn from the parties' Local Rule 56.1 statements and

responses. *See* Dkt. 35 ("Jt. 56.1"); Dkt. 38 ("Def. 56.1"); Dkt. 42 at 1-36 ("Pl. 56.1

Counterstatement"); Dkt. 42 at 37-54 ("Pl. 56.1"); Dkt. 50 ("Def. 56.1 Counterstatement").

Citations to Rule 56.1 statements incorporate by reference the record evidence cited therein as

well as the opposing party's admission of a given fact. Defendants attach the record evidence

cited in their 56.1 statement at Dkt. 40 ("Abitabilo Aff.") and Dkt. 51 ("Abitabilo Reply Aff."), and Plaintiff attaches her record evidence at Dkt. 45 ("Bracero Decl.").[1]

## I.   Factual Background

This action arises out of Ebadi's employment with, and eventual termination from, Diamond Standard. Diamond Standard produces and sells diamond coins and bars. Jt. 56.1 ¶ 1. Diamond Standard consists of a parent company, Diamond Standard Inc., and several affiliated entities including Diamond Standard LLC, a New York based subsidiary that manages the company's U.S.-based operations. *Id.* ¶¶ 3-4. Cormac Kinney ("Kinney") is the founder and Chief Executive Officer of Diamond Standard Inc. and the senior executive of all affiliated entities. Def. 56.1 ¶ 6; Abitabilo Aff., Ex. 3, Kinney Dep. at 6-7.

On March 14, 2022, Diamond Standard hired Ebadi as a Senior Accountant. Jt. 56.1 ¶ 10. Ebadi obtained her bachelor's degree in business management in 2019 and a master's degree in accounting in 2020. *Id.* ¶ 22. Before being hired at Diamond Standard, Ebadi had six years of experience working as a self-employed accountant. Pl. 56.1 ¶¶ 31-32; Bracero Decl., Ex. 2, Pl. Dep. 129; Bracero Decl., Ex. 26. Ebadi was referred to Diamond Standard by a recruiting agency, Nigel Frank, which specializes in sourcing candidates with expertise in Microsoft Dynamics, an Enterprise Resource Planning ("ERP") platform. Jt. 56.1 ¶¶ 11-13. When gauging Ebadi's interest in the position, Nigel Frank gave her the job description for the Controller position. *Id.* ¶ 14. Ebadi interviewed with Chief Financial Officer ("CFO") James

---

[1] Where facts stated in a party's Rule 56.1 statement are supported by admissible record evidence and denied by a conclusory statement by the other party without citation to conflicting admissible record evidence, the Court deems such facts as admitted. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."); *accord Kesner v. Buhl*, 590 F. Supp. 3d 680, 691 (S.D.N.Y. 2022).

Campbell ("Campbell"), Diamond Standard advisor John Betts ("Betts"), and then-interim Chief Operating Officer ("COO") Doug Jordan ("Jordan"). *Id.* ¶ 16.

Despite Ebadi's interest in the Controller position, Diamond Standard told her that she was not a candidate for the role because she lacked experience with a specific cost-control module within Microsoft Dynamics. *Id.* ¶ 19. Instead, she was being considered for the Senior Accountant position, *id.* ¶ 18, which she was eventually offered, *id.* ¶ 21. Ebadi accepted, with a starting salary of $110,000 per year. *Id.* ¶¶ 21, 23. According to Ebadi's offer letter, she would report to Campbell. *Id.* ¶ 24. As Senior Accountant, Ebadi's primary responsibilities included "day-to-day data entry related to accounts payable and accounts receivable, reconciliation, and month end closings." *Id.* ¶ 25. Diamond Standard expected Ebadi to work from 9:00 a.m. until 5:00 or 6:00 p.m., with two to three days per week in-person at the New York City office. *Id.* ¶¶ 27-28.

On April 5, 2022, Diamond Standard hired Pablo Patino ("Patino") as Controller with a starting salary of $160,000 per year. *Id.* ¶¶ 35, 37. Before he was hired, Patino had accrued approximately 18 years of accounting experience, including several years of management experience, and had been employed by a large public accounting firm. *Id.* ¶ 41. As Controller, Patino's responsibilities included dealing with external auditors, reconciling assets under management with third parties, and supporting the budgeting and financial planning processes. *Id.* ¶ 42.

Ebadi was not happy with the decision to hire Patino as Controller and expressed her frustrations to Campbell and one of her coworkers, Alicia Kenny. *Id.* ¶ 43. Ebadi had been involved in the interviewing process, *see id.* ¶ 36, and she did not believe that Patino was a fit for the Controller position because, in her opinion, he did not have relevant work experience and was not well-versed in Diamond Standard's ERP platform, *id.* ¶ 44. After Patino began working

3

for Diamond Standard, Ebadi continued to text Kenny about these frustrations and Patino's pay. Pl. 56.1 ¶ 51; Bracero Decl., Ex. 17, Ebadi 00062. At one point in these discussions, Ebadi texted "I want equality" to which Kenny replied "and so do I." Pl. 56.1 ¶¶ 51-52; Bracero Decl., Ex. 17, Ebadi 00062. At the end of May 2022, Ebadi met with Campbell and expressed her frustrations with Patino's work performance and compensation. Jt. 56.1 ¶ 51. In this meeting, Ebadi did not tell Campbell that she believed the disparity was due to gender discrimination. *Id.* ¶ 52. Instead, Ebadi expressed frustration with Patino's work performance and prior experience. *Id.* ¶ 53. She told Campbell that she intended to resign. *See id.* ¶ 55. Campbell urged her not to quit, and Ebadi ultimately did not resign. *Id.* ¶¶ 56-57.

On May 31, 2022, Ebadi sent a series of text messages to Kenny recounting her meeting with Campbell, expressing frustration with her pay discrepancy, and indicating that she was looking for a new job. *Id.* ¶¶ 54-55. In July 2022, Ebadi again met with Campbell and discussed the discrepancy between her salary and Patino's. Def. 56.1 ¶ 110; Abitabilo Aff., Ex. 2, Pl. Dep. at 377-79. She raised similar concerns with Betts, telling him that Patino "need[ed] a lot of hand holding," and that Ebadi had "to constantly do his work for him," even though he was the Controller and was paid accordingly. Def. 56.1 ¶ 111; Abitabilo Aff., Ex. 2, Pl. Dep. at 381-82. Although Diamond Standard disputes this, Ebadi testified that during her meeting with Campbell, she also complained to Campbell that the pay disparity was due to gender discrimination. *See* Pl. 56.1 Counterstatement ¶ 110; Bracero Decl., Ex. 2, Pl. Dep. at 376-78.

During this time, Ebadi's colleagues raised issues about her work style with her teammates. On May 30, 2022, Adam Bauman — Diamond Standard's Manager of Financial Planning and Analysis, *see* Jt. 56.1 ¶ 45 — sent an email to Betts expressing his concerns regarding Ebadi's ability to collaboratively work as a member of a team and her behavior toward Patino. *Id.* ¶ 50. Kinney, the CEO, was told about these concerns, and there were discussions

4

with senior management about terminating Ebadi's employment.  Def. 56.1 ¶¶ 100-01; Abitabilo

Aff., Ex. 3, Kinney Dep. at 120-21, 125.  Kinney decided not to terminate Ebadi's employment,

and instead directed Campbell to work with Ebadi and Nigel Frank to resolve the issues.  Def.

56.1 ¶ 104; Abitabilo Aff., Ex. 3, Kinney Dep. at 120-23.  Campbell met with Ebadi in May

2022 and, on June 7, 2022, advised Nigel Frank of that meeting, stating:

> [Ebadi] remains adamant that because she knows MS Dynamics better than most
> of our finance team combined with her other technical skills, that she should be on
> par with others in terms of compensation and job title even though she lacks the
> years of work experience others bring to the table.  As we mentioned on our call
> last week, we are aware she is interviewing with other potential employers.

Jt. 56.1 ¶ 61; Abitabilo Aff., Ex. 19.  At no point in this email did Campbell suggest that Ebadi

had complained of gender discrimination during their May 2022 meeting.  Def. 56.1 ¶ 107;

Abitabilo Aff., Ex. 19.  The issues, however, were not resolved, and Kinney was informed that

the concerns raised about Ebadi were only getting worse.  Def. 56.1 ¶ 112; Abitabilo Aff., Ex. 3,

Kinney Dep. at 128.  On or about July 26, 2022, Betts informed Bauman that Diamond Standard

had decided to terminate Ebadi's employment.  Def. 56.1 ¶ 115; Abitabilo Aff., Ex. 4, Bauman

Dep. at 61-62.  Notwithstanding this, Kinney ultimately decided not to fire Ebadi.  Def. 56.1

¶ 116; Abitabilo Aff., Ex. 4, Bauman Dep. at 64; Dkt. 39 ("Kinney Decl.") ¶ 10.

However, on July 27, 2022, Ebadi arrived late to work and missed a team huddle.  Jt.

56.1 ¶ 65.  She had previously emailed Kenny that she would not attend meetings at 9:00 a.m.

*Id.* ¶¶ 63-64.  After skipping the morning meeting, she approached Bauman to discuss a non-

priority project, and Bauman reminded her that she should concentrate on other matters.  *Id.*

¶¶ 65-67.  Ebadi later sent Bauman an apology email for raising the topic "on such a busy day,"

acknowledging that it was "definitely bad timing."  Pl. 56.1 ¶ 89; Bracero Decl., Ex. 9.

Following this discussion, Bauman left work and did not attend a team-building event that night

because he "felt that he was not in the right mindset to go."  Jt. 56.1 ¶¶ 68-69.  When Kinney was

told about the exchange between Ebadi and Bauman, and the fact that Bauman did not attend the team-building event because of it, he decided to terminate Ebadi's employment. *Id.* ¶ 70. He described the incident with Bauman as the "last straw because there were many straws," testifying that:

> [E]veryone was in New York from Bermuda, from Connecticut for a meeting and a party. And you know, before this, we — they had asked to fire her before. And I said no, no, no, let's try to get her a coach. So this was the last straw . . . [S]o what I was told was that [Plaintiff] was yelling at [Bauman] and he left like in a huff. And the way it was told to me . . . he was all red and he left and he didn't show up the party. So that was for me the final straw, and I think for the rest of the team.

Def. 56.1 ¶ 125; Kinney Dep. at 139-40. Ebadi's employment was ultimately terminated on July 27, 2022. Jt. 56.1 ¶ 71. During her termination meeting, Kinney gave Ebadi a flash drive so that she could remove her personal files from her company laptop. *Id.* ¶¶ 73-74. While removing her personal files, Ebadi also deleted non-personal work-related files. *Id.* ¶¶ 75-76. On August 1, 2022, Kinney emailed Ebadi stating that:

> [Y]ou deleted over 700 MB of company files from the laptop . . . I have not decided what actions to take. Obviously, this is a computer crime, and the company has been financially damaged. You may be criminally prosecuted or we may sue you for damages. At this moment we are reserving all rights.

*Id.* ¶ 77. Ebadi offered to assist in retrieving the files that were deleted, Pl. 56.1 ¶¶ 90, 91; Bracero Decl., Ex. 21, but Kinney did not accept the help or otherwise answer her message, because he "had decided to sue her and . . . was in the process of filing a criminal complaint," and believed it would be inappropriate to "have any direct contact with her, presuming she would be represented by counsel," Pl. 56.1 ¶ 97; Bracero Decl., Ex. 12, Kinney Dep. at 117. Diamond Standard then hired an accounting consultant to assist with the recovery and reconstruction of the deleted documents. Def. 56.1 ¶ 135; Abitabilo Aff., Ex. 3, Kinney Dep. at 150; Kinney Decl., ¶ 15.

On December 6, 2022, Plaintiff filed a Charge of Discrimination against Diamond Standard with the EEOC. Jt. 56.1 ¶ 78. On March 7, 2023, Diamond Standard sued Ebadi in the New York State Supreme Court of New York County, alleging breach of fiduciary duty, conversion, and violation of the Computer Fraud and Abuse Act arising out of her deletion of the work-related files. *Id.* ¶ 79. That suit was dismissed without any finding on the merits. *Id.* ¶ 80.

## II.    Procedural Background

Ebadi commenced the present action against Defendants on January 5, 2024, alleging that Diamond Standard discriminated against her on the basis of gender by not hiring her for the Controller position, paying her less than male employees, terminating her employment, and creating a hostile work environment, all of which she alleged were in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* (the "NYSHRL"), and the New York City Human Rights Law, Administrative Code of the City of New York § 8-107 *et seq.* (the "NYCHRL"). *See generally* Dkt. 1 ("Compl."). Ebadi also claimed that Diamond Standard retaliated against her in violation of these laws by terminating her employment and subsequently suing her. *See generally id.*

On June 20, 2025, Defendants moved for summary judgment on all of Ebadi's claims. *See* Dkt. 36 ("MSJ"); Dkt. 37 ("Br."); Kinney Decl.; Abitabilo Aff. The parties filed a Joint 56.1 Statement of Undisputed Material Facts, their own Rule 56.1 Statements, and responses to the Rule 56.1 statements. *See* Jt. 56.1; Def. 56.1; Pl. 56.1 Counterstatement; Pl. 56.1; Def. 56.1 Counterstatement. Ebadi filed her opposition to the motion on July 11, 2025. *See* Dkt. 41 ("Opp."); Bracero Decl. In her opposition brief, Ebadi withdrew her claims for failure to hire and hostile work environment. Opp. at 14. Therefore, the only remaining claims are those for gender discrimination regarding her wages and termination under Title VII, the NYSHRL, and

the NYCHRL, and retaliation under the same laws.  Defendants filed their reply on August 8,

2025.  *See* Dkt. 49 ("Reply"); Abitabilo Reply Aff.

## LEGAL STANDARD

Under Rule 56, a moving party is entitled to summary judgment if, on any claim or

defense, that party "shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' only if it

'might affect the outcome of the suit under the governing law,'" and "[a] dispute is 'genuine' if

'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"

*Rosen v. UBS Fin. Servs. Inc.*, No. 22-cv-03880 (JLR), 2023 WL 6386919, at *4 (S.D.N.Y. Sept.

29, 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"'The party seeking summary judgment bears the burden of establishing that no genuine

issue of material fact exists,' but 'when the burden of proof at trial would fall on the nonmoving

party, it ordinarily is sufficient for the movant to point to' an absence of evidence 'on an

essential element of the nonmovant's claim.'"  *Bustamante v. KIND, LLC*, 100 F.4th 419, 432

(2d Cir. 2024) (quoting *Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 108 (2d Cir. 2023)).  If

the moving party meets this burden, then "the nonmoving party must come forward with

admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary

judgment."  *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).  However, "[a]

party may not rely on mere speculation or conjecture as to the true nature of the facts to

overcome a motion for summary judgment."  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

In ruling on a motion for summary judgment, the Court must view "the evidence in the

light most favorable to the non-moving party" and "resolve all ambiguities and draw all

permissible factual inferences in favor of the party against whom summary judgment is sought."

*Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (first quoting *VKK Corp. v. Nat'l*

*Football League*, 244 F.3d 114, 118 (2d Cir. 2001); and then quoting *Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006)).  To defeat a motion for summary judgment, the nonmoving party must advance more than "a scintilla of evidence," *Liberty Lobby*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## DISCUSSION

Diamond Standard argues that the Court should grant summary judgment on all of Ebadi's discrimination claims because she has not demonstrated a *prima facie* case for gender discrimination regarding her pay and termination.  *See* Br. at 11.  Likewise, Diamond Standard argues that summary judgment should be granted on Ebadi's retaliation claims because she cannot establish a *prima facie* case for retaliation based on her termination or the subsequent lawsuit, and even if she could, there is not sufficient evidence to lead a reasonable jury to conclude that such actions were done with retaliatory animus.  *Id.* at 23-29.  The Court agrees with Diamond Standard.

### I.    Gender Discrimination Claims

The Court begins with the gender discrimination claims.  Discrimination claims under Title VII, the NYSHRL, and the NYCHRL are governed by the "burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."  *Lenzi*, 944 F.3d at 107 (quoting *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400-01 (2d Cir. 1998)); *see also Valerio v. Metro. Transp. Auth.*, No. 23-cv-01938 (DLC), 2024 WL 2305386, at *5 (S.D.N.Y. May 20, 2024) ("Discrimination claims brought under the NYCHRL and NYSHRL are also analyzed using the same basic framework as Title VII claims."), *aff'd*, No. 24-1614, 2025 WL 686028 (2d Cir. Mar. 4, 2025) (summary order).  Under this framework, the "plaintiff must first establish a *prima facie* case of discrimination."  *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010).  Although

9

"the burden of establishing a prima facie case is 'minimal' . . . , a plaintiff cannot establish a prima facie case based on 'purely conclusory allegations of discrimination, absent any concrete particulars.'" *Boatright v. U.S. Bancorp*, No. 18-cv-07293 (LJL), 2020 WL 7388661, at *14 (S.D.N.Y. Dec. 16, 2020) (first quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); and then quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)), *aff'd*, No. 20-4236-cv, 2022 WL 351059 (2d Cir. Feb. 7, 2022) (summary order). "Once a plaintiff meets this initial burden, the burden then shifts to the defendant to offer a legitimate nondiscriminatory reason for the termination." *Ruiz*, 609 F.3d at 492. If the defendant meets that burden, then "the plaintiff must establish, by a preponderance of the evidence, that the employer's justification is a pretext for discrimination." *Legg v. Ulster Cnty.*, 820 F.3d 67, 74 (2d Cir. 2016).

Although all three laws are governed by the same general analytical framework, the NYSHRL and NYCHRL grant broader protections for employees than Title VII, and "courts must analyze NYCHRL [and NYSHRL] claims separately and independently from any federal and state law claims, construing the NYCHRL's [and NYSHRL's] provisions 'broadly in favor of discrimination plaintiffs.'" *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (citations omitted) (quoting *Albunio v. City of New York*, 947 N.E.2d 135, 137 (N.Y. 2011)); *see Kurtanidze v. Mizuho Bank, Ltd.*, No. 23-cv-08716 (PAE), 2025 WL 1898927, at *11 (S.D.N.Y. July 9, 2025) ("[T]he NYSHRL's standards, which until a recent amendment had been keyed to the more demanding federal-law standards, today remain no less demanding than those of the NYCHRL."); *Valerio*, 2024 WL 2305386, at *5 (observing that following the 2019 amendment, "the NYS[H]RL must be 'construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed'" (quoting N.Y. Exec. Law. § 300 (2023))).

10

To recover under the NYSHRL and NYCHRL, "the plaintiff need only show differential treatment — that she is treated 'less well' — because of a discriminatory intent." *Mihalik*, 715 F.3d at 110. Although the NYSHRL and NYCHRL provide a lenient standard for establishing liability, "[t]he plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive." *See id.* ("[Plaintiff] must show that she has been treated less well at least in part '*because of* her gender.'" (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 39, 40 n.27 (N.Y. App. Div. 2009))); *accord Kurtanidze*, 2025 WL 1898927, at *11. If the plaintiff meets that burden, "defendants may assert 'an affirmative defense whereby [they] can still avoid liability if they prove that the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider petty slights and trivial inconveniences.'" *Mihalik*, 715 F.3d at 111 (internal quotations omitted) (quoting *Williams*, 872 N.Y.S.2d at 41). "[S]ummary judgment is appropriate if 'the record establishes as a matter of law' that discrimination *or* retaliation 'play[ed] no role' in the defendant's actions." *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 76 (2d Cir. 2015) (quoting *Mihalik*, 715 F.3d at 110 n.8).

Ebadi alleges that Diamond Standard subjected her to two adverse employment actions because of her gender: (1) paying her less than her male colleague, Patino,[2] even though she performed the same work; and (2) terminating her employment. *See* Opp. at 11, 14. Diamond Standard argues that the evidence does not permit a reasonable jury to find a *prima facie* case of employment discrimination under Title VII, the NYSHRL, or the NYCHRL. *See* Br. at 12-14; Reply at 2, 6-7. The Court agrees with Diamond Standard and will address each claim in turn.

---

[2] While Diamond Standard suggests that Ebadi also points to pay differentials between herself and Bauman, *see* Br. at 13-14, Ebadi's opposition brief identifies only Patino as the male comparator, *see* Opp. at 13.

A.      **Unequal Pay**

1.  **Title VII**

Ebadi claims that Diamond Standard engaged in gender discrimination in violation of Title VII by paying her less because of her gender.  "To make out a *prima facie* case [of pay discrimination] a plaintiff is required to show that: (1) she was a member of a protected class; (2) she was qualified for the job in question; (3) she was paid less than those who were not members of her protected class for the same work; and (4) the employer's adverse employment decision occurred under circumstances that raise an inference of discrimination."  *Boatright*, 2020 WL 7388661, at *14.

One way to establish a *prima facie* claim for gender discrimination is to show that the defendant "pa[id] [the plaintiff] less than her male peers who perform equal work" under "circumstances [that] admit 'an inference of discrimination.'"  *Lenzi*, 944 F.3d at 110 (quoting *Belfi v. Prendergast*, 191 F.3d 129, 140 (2d Cir. 1999)); *accord Boatright*, 2020 WL 7388661, at *15.  "[T]o qualify as comparators, these individuals must be 'similarly situated in all material respects' to [p]laintiff."  *Bucek v. Gallagher Bassett Servs., Inc.*, No. 16-cv-01344 (KMK), 2018 WL 1609334, at *14 (S.D.N.Y. Mar. 29, 2018) (quoting *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)).  Relevant similarities for this purpose include those "in education, seniority, performance, and specific work duties, and similar requirements for skill, effort and responsibility for jobs performed under similar working conditions."  *Potash v. Fla. Union Free Sch. Dist.*, 972 F. Supp. 2d 557, 580 (S.D.N.Y. 2013) (citation modified); *accord Bramble v. Moody's Corp.*, No. 19-cv-05182 (NSR), 2023 WL 2330475, at *5 (S.D.N.Y. Mar. 2, 2023), *aff'd*, No. 23-506, 2024 WL 705955 (2d Cir. Feb. 21, 2024) (summary order).

Ebadi adopts this method, basing her pay discrimination claim on the theory that she was paid less than her male comparator, Patino, despite performing the same work.  Opp. at 12-13.

12

Diamond Standard argues that there is insufficient evidence for a reasonable jury to find that Patino and Ebadi were similarly situated in all material respects and no basis to infer discriminatory animus under the circumstances.  Br. at 13-14; Reply at 4-5.

The Court agrees that the record lacks sufficient evidence for a reasonable jury to find that Ebadi and Patino were similarly situated in all material respects.  While working at Diamond Standard, Ebadi was a Senior Accountant, *see* Jt. 56.1 ¶ 25, while Patino worked as a Controller, *see id.* ¶ 35.  According to the undisputed record, the two positions required different duties, qualifications, and skill sets.  *Compare id.* ¶¶ 25-26, *with id.* ¶ 42.  For example, a Senior Accountant's "responsibilities included, but were not necessarily limited to, day to day data entry related to accounts payable and accounts receivable, reconciliation, and month end closings."  *Id.* ¶ 25.  In contrast, "[t]he Controller position included responsibility for dealing with external auditors, reconciling assets under management with third parties, as well as involvement in the budgeting and financial planning processes."  *Id.* ¶ 42.  Ebadi even acknowledged the difference between the positions in her own testimony, stating that the Controller role is a "higher level" position than hers as Senior Accountant.  Def. 56.1 ¶ 51; Abitabilo Aff., Ex. 1, Pl. Dep. at 213, 236-37; *id.* Ex. 2, Pl. Dep. at 384.

Ebadi, unlike Patino, did not meet the qualifications for the Controller position.  The parties agree that Diamond Standard required 3-5 years of experience in a management accounting role, *see* Jt. 56.1 ¶ 40, and Kinney, the CEO, also testified that a Controller of a company of more than five to ten employees should have a minimum of 8-10 years of work experience, *see id.* ¶¶ 39.  Ebadi does not present evidence that she had 3-5 years of experience in management accounting, and admits only to having 6 years of accounting experience.  *See* Pl. 56.1 ¶ 32.  Diamond Standard further told Ebadi during her interview that she was not qualified for the Controller position because she did not have experience with a specific module in

13

Microsoft Dynamics. Jt. 56.1 ¶ 19. In contrast, Patino was qualified for the Controller position because he had approximately 18 years of accounting experience, including several years of management experience, and had previously been employed by a large public accounting firm. *Id.* ¶ 41.

Ebadi argues that there is a dispute of material fact as to whether she and Patino were similarly situated because the record contains evidence that Nigel Frank referred her to Diamond Standard for the Controller position, Kinney testified there could be exceptions to the requirement of 3-5 years of *management* accounting experience, and Ebadi testified that she performed the same work as Patino. Opp. at 12-13. The Court disagrees on all fronts.

For gender discrimination claims, "[i]t is well-established that to determine whether an employee is 'qualified' under the *McDonnell Douglas* analysis, a court must examine 'the criteria the employer has specified for the position.'" *Brown v. Donat*, No. 24-1344-cv, 2025 WL 1430572, at *3 (2d Cir. May 19, 2025) (summary order) (quoting *Thornley v. Penton Publ'g, Inc.*, 104 F.3d 26, 29 (2d Cir. 1997)). "Moreover, employers have broad discretion to determine the necessary job qualifications." *Sulehria v. City of New York*, 670 F. Supp. 2d 288, 309 (S.D.N.Y. 2009) (collecting cases). Even though Nigel Frank gauged Ebadi's interest in the Controller position, *see* Jt. 56.1 ¶ 14, Diamond Standard, the employer, told Ebadi that she was not qualified and that her resume did not meet the objective requirements, *see id.* ¶ 19. Thus, Nigel Frank's referral of Ebadi does not create a genuine dispute over whether Ebadi was qualified for Diamond Standard's Controller position.

Next, while Kinney testified there could be exceptions to the requirement of 3-5 years of management accounting experience, his testimony made clear that those exceptions apply to "superstar[s]" who perhaps spent fifteen years doing something else, came to accounting, and were consistently promoted three times in three years. *See* Pl. 56.1 ¶¶ 29-30; Bracero Decl., Ex.

14

14, Kinney Dep. at 36-37.  It is undisputed that Ebadi did not fit that description.  More importantly, even if Ebadi could have been hired despite not meeting all of Diamond Standard's objective qualifications, the undisputed record shows that Patino had significantly more relevant experience.  Before joining Diamond Standard, Patino had approximately 18 years of experience in accounting, Jt. 56.1 ¶ 41, three times Ebadi's experience, *see* Pl. 56.1 ¶ 32.  Patino also had several years of management experience, Jt. 56.1 ¶ 41, whereas Ebadi had none.  This contrast in qualifications is further reinforced by Kinney's testimony that "[s]he was not qualified" or "capable" of performing the "[C]ontroller roles."  Abitabilo Aff. Ex. 3, Kinney Dep. at 41-42.  Hence, Kinney's testimony regarding the exception to the management experience requirement does not create a genuine issue of material fact as to whether Patino and Ebadi were similarly situated because they did not have comparable experience and qualifications.  *See, e.g.*, *Miller v. Levi & Korsinsky, LLP*, 695 F. Supp. 3d 397, 408 (S.D.N.Y. 2023) (finding male comparators inadequate when "[t]he difference in experience and work history between [the male comparators] . . . and [plaintiff] . . . is too significant").

Likewise, Ebadi's testimony that she performed the same work as Patino does not create a genuine issue of material fact as to whether she and Patino were similarly situated.  The parties agree that the Controller position "included responsibility for dealing with external auditors, reconciling assets under management with third parties, as well as involvement in the budgeting and financial planning processes."  Jt. 56.1 ¶ 42.  Although Ebadi testifies to performing some of Patino's tasks, she does not claim that she was involved in budgeting or financial planning.  *See* Pl. 56.1 ¶ 36; Bracero Decl., Ex. 2, Pl. Dep. at 142-44, 214, 278.  Thus, Ebadi's testimony, without more, does not create a genuine issue of material fact as to whether she and Patino performed the same work.  *See, e.g.*, *Miller v. City of New York*, No. 15-cv-07563 (WHP), 2018 WL 2059841, at *7 (S.D.N.Y. May 1, 2018) (finding comparators inadequate when "all that

15

[p]laintiffs point to in arguing that these positions are 'similarly situated' is that some work duties overlap"), *aff'd sub nom.*, *Bloise v. City of New York*, 768 F. App'x 103 (2d Cir. 2019) (summary order); *Drury v. Waterfront Media, Inc.*, No. 05-cv-10646 (JSR), 2007 WL 737486, at *3 (S.D.N.Y. Mar. 8, 2007) (similar); *Chepak v. N.Y.C. Health & Hosps. Corp.*, No. 11-cv-09698 (KBF), 2015 WL 509279, at *10 (S.D.N.Y. Feb. 5, 2015) (finding comparator inadequate where plaintiff did "not offer[] any non-conclusory evidence that the actual job content of her comparators' positions was 'substantially equal' to her own job content in skill, effort, or responsibility"), *aff'd*, 643 F. App'x 62 (2d Cir. 2016) (summary order); *Kaye v. N.Y.C. Health & Hosps. Corp.*, No. 18-cv-12137 (JPC) (JLC), 2023 WL 2745556, at *15 (S.D.N.Y. Mar. 31, 2023) (similar).

Given that Ebadi and Patino held different positions with different responsibilities, Ebadi was not qualified for Patino's Controller position, and Patino undisputedly had more relevant experience that Ebadi, no reasonable jury could find that Ebadi and Patino were similarly situated in all material respects. *See, e.g.*, *Wheeler v. Praxair Surface Techs., Inc.*, 694 F. Supp. 3d 432, 459-60 (S.D.N.Y. 2023) (finding comparators inadequate when the comparators held higher posts, had longer tenures at the company, and had more experience than plaintiff); *Bandhan v. Lab'y Corp. of Am.*, 234 F. Supp. 2d 313, 317-18 (S.D.N.Y. 2002) (finding that plaintiff could not establish a *prima facie* claim for pay discrimination when comparator had more work experience, more seniority, and held a supervisory position before plaintiff was promoted to the same position); *Quarless v. Bronx-Lebanon Hosp. Ctr.*, 228 F. Supp. 2d 377, 384 (S.D.N.Y. 2002) (holding that plaintiff did not show an adequate comparator because he did not "account[] for differences in education, seniority, performance, or specific work duties"), *aff'd*, 75 F. App'x 846 (2d Cir. 2003) (summary order).

16

Even if Patino and Ebadi were similarly situated, the record does not contain sufficient evidence to permit a reasonable jury to infer discriminatory animus, which a "Title VII disparate treatment claim requires." *Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 483 (2d Cir. 2001); *accord Edelman v. NYU Langone Health Sys.*, No. 21-cv-00502 (LGS), 2022 WL 4537972, at *9 (S.D.N.Y. Sept. 28, 2022). To establish a *prima facie* case of pay discrimination, a plaintiff cannot rely solely on wage disparity to show that animus. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995) ("[T]he fact that those employees were paid more than she was and that they are men . . . do[es] not support an inference that [a defendant] acted with a discriminatory intent."), *abrogated on other grounds*, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *see also Kairam v. W. Side GI, LLC*, No. 18-cv-01005 (AT) (SDA), 2025 WL 2935321, at *21 (S.D.N.Y. June 21, 2025) ("[I]t is well settled that claims of disparities in pay, without more, are insufficient to demonstrate discriminatory animus." (quoting *McCullough v. Xerox Corp.*, 224 F. Supp. 3d 193, 199 (W.D.N.Y. 2016)), *report and recommendation adopted*, 2025 WL 2778915 (S.D.N.Y. Sept. 30, 2025); *accord David v. Comtech PST Corp.*, No. 03-cv-06480 (JO), 2006 WL 2713936, at *15 (E.D.N.Y. Sept. 22, 2006). "An inference of discrimination can be proven through a variety of methods, including 'the employer's criticism of the plaintiff's performance in [sexist] terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the [adverse employment action].'" *Espinoza v. N.Y.C. Dep't of Transp.*, 304 F. Supp. 3d 374, 389 (S.D.N.Y. 2018) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015)).

Ebadi does not point to any evidence of invidious comments about women or favoritism towards male employees; instead, she relies solely on Patino's higher pay, which is insufficient. *See Hatzimihalis v. SMBC Nikko Sec. Am., Inc.*, No. 20-cv-08037 (JPC), 2023 WL 3764823, at

17

*12 (S.D.N.Y. June 1, 2023) (granting summary judgment on Title VII disparate pay claim when plaintiff "has not presented any evidence of animus on the part of her employer"); *Drury*, 2007 WL 737486, at *5 (deciding that Title VII pay discrimination claims could not survive summary judgment when "plaintiff . . . failed to adduce any evidence whatever sufficient to allow a reasonable juror to conclude that plaintiff's wages were kept lower . . . as a result of intentional discrimination based on gender"); *Bansal v. City of New York*, No. 18-cv-00878 (ENV) (LB), 2020 WL 13659112, at *11 (E.D.N.Y. Feb. 24, 2020) (finding that "assertions that an inference of discrimination exists merely because of a salary difference and their protected class is insufficient" to establish a *prima facie* case of pay discrimination at summary judgment).

Ebadi points to her text messages with her co-worker Kenny, where they surmise that the pay gap is based on sex discrimination. Opp. at 13; Pl. 56.1 ¶¶ 43-50, 63-64, 68, 73. Their comments, however, are based only on "the same wage disparities" between Patino and Ebadi, which "as discussed above, are not evidence of any wrongdoing." *Drury*, 2007 WL 737486, at *5; *Bucek*, 2018 WL 1609334, at *15 (granting summary judgment because "[p]laintiff's claim amounts to an assertion that she was a woman and earned less than a man, so that pay disparity must be a product of gender discrimination"). Moreover, Ebadi's conjecture is not enough for a reasonable jury to infer discriminatory animus. *See, e.g.*, *Nguyen v. Dep't of Corr. & Cmty. Servs.*, 169 F. Supp. 3d 375, 388 (S.D.N.Y. 2016) ("Conclusory and speculative allegations will not suffice to demonstrate discriminatory intent. Rather, a plaintiff 'must point to facts that suggest' that the adverse employment action was motivated, at least in part, by discriminatory animus." (citation omitted)); *McManamon v. City of New York Dep't of Corr.*, No. 07-cv-10575 (BSJ) (JCF), 2009 WL 2972633, at *5 (S.D.N.Y. Sept. 16, 2009) ("In the absence of evidence of legally cognizable discriminatory behavior, a court 'cannot infer discrimination from thin air.'" (quoting *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001))); *Cox v. Quick & Reilly, Inc.*,

18

401 F. Supp. 2d 203, 215-16 (N.D.N.Y. 2005) ("Plaintiff provided no evidence, other than the fact that [a male employee's] compensation was higher than hers, to support her contention that she was paid less *because* she was a woman. . . . Without evidence that defendants intentionally paid [the] plaintiff less than [that male employee] because she was a woman, no rational jury could find discriminatory intent."). Thus, summary judgment is granted in favor of Defendants on Ebadi's Title VII claim relating to pay discrimination.

### 2. NYSHRL and NYCHRL

For similar reasons, Ebadi's pay discrimination claim under the NYSHRL and NYCHRL cannot survive summary judgment. Although the NYSHRL and NYCHRL grants employees broader protections than its federal and state counterparts, "a plaintiff must still link the adverse employment action to a discriminatory motivation." *Kops v. PPM Am., Inc.*, No. 15-cv-01584 (GBD), 2016 WL 7188793, at *5 (S.D.N.Y. Dec. 5, 2016) (quoting *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 258 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163, 258 (2d Cir. 2013)); *see also Valerio*, 2025 WL 686028, at *4 (affirming dismissal of NYCHRL and NYSHRL claims when plaintiff "has not produced any admissible evidence of direct unlawful discriminatory intent or disparate treatment"). Here, Ebadi does not present sufficient evidence to show that gender played a role in the difference in pay between herself and Patino. As discussed above, Patino and Ebadi held different positions requiring different qualifications, had different work experience, and performed different work. *See supra* Part I.A.1; *see also Miller*, 2018 WL 2059841, at *8 (granting summary judgment on NYCHRL claims when plaintiff did not identify appropriate comparators). Ebadi also does not point to any evidence of discriminatory remarks or preferential treatment, or any other evidence to support an inference that gender was the basis for any pay differential. *See supra* Part I.A.1; *see Hodgson v. City of New York*, No. 12-cv-01634 (HB), 2013 WL 840874, at *5 (S.D.N.Y. Mar. 7, 2013) ("Without evidence of

19

discriminatory animus, [p]laintiff cannot sustain an NYCHRL claim."); *Stapleton v. Prince Carpentry, Inc.*, No. 22-cv-04044 (NCM) (JMW), 2025 WL 2591519, at *7 (E.D.N.Y. Sept. 8, 2025) (dismissing NYSHRL pay discrimination claims when "plaintiff has not offered any evidence that her wage rate was based on her sex, or any evidence of discriminatory intent, circumstantial or otherwise"). As such, there is insufficient evidence for a jury to conclude that gender discrimination played a role in Diamond Standard's decision to pay Ebadi less than Patino. *See Ya-Chen Chen*, 805 F.3d at 76. Thus, Defendants are entitled to summary judgment on Ebadi's NYSHRL and NYCHRL pay discrimination claims.

### B. Termination

#### 1. Title VII

Ebadi's Title VII discrimination claim arising out of her termination also fails because there is not sufficient evidence for a reasonable jury to infer discriminatory animus. To establish a *prima facie* case of discrimination relating to termination, a plaintiff must show "(1) plaintiff is a member of a protected class; (2) plaintiff was qualified for his or her position; (3) plaintiff was subjected to an adverse employment action; and (4) the adverse employment action took place under circumstances giving a rise to an inference of discrimination based on plaintiff's membership in the protected class." *Moccio v. Cornell Univ.*, 889 F. Supp. 2d 539, 571-72 (S.D.N.Y. 2012), *aff'd*, 526 F. App'x 124 (2d Cir. 2013) (summary order). There is no dispute regarding the first three requirements. Ebadi is a woman, she was qualified for the position of Senior Accountant, and she was fired by Diamond Standard. *See, e.g.*, *Doheny v. Int'l Bus. Machs., Corp.*, 714 F. Supp. 3d 342, 361 (S.D.N.Y. 2024) ("Termination, of course, is an adverse employment action."). However, with respect to the fourth requirement, Ebadi does not identify any evidence that her termination took place under circumstances giving rise to an inference of gender discrimination. There is no evidence that she was "subjected to any

20

'invidious comments' about her protected group," *Newton v. Whole Foods Mkt.*, No. 20-cv-03993 (RA), 2022 WL 4619111, at \*9 (S.D.N.Y. Sept. 30, 2022) (quoting *Littlejohn*, 795 F.3d at 312); *see also id.* (finding "[p]laintiff . . . fail[ed] to establish a *prima facie* case" for this reason and where the only evidence of discriminatory animus was "plainly too vague and speculative"), or that similarly situated male employees engaged in the same conduct but were not terminated, *see Asiedu v. Broadreach Med. Res.*, No. 19-cv-11825 (ER), 2022 WL 4237077, at \*16 (S.D.N.Y. Sept. 13, 2022) (finding plaintiff failed to establish a *prima facie* case of termination-based discrimination when "[plaintiff] has not identified any individuals who engaged in similar conduct and were similarly situated to her and not terminated").  Ebadi points only to evidence that Kinney "accept[ed] a male employee's false and exaggerated account of a normal workplace interaction knowing it would portray [Ebadi] (a woman) as 'difficult.'"  Opp. at 14.  But this is simply "too vague and speculative to serve as evidence of discriminatory motivation."  *Newton*, 2022 WL 4619111, at \*9; *see also Moccio*, 889 F. Supp. 2d at 572 ("[O]n summary judgment, a plaintiff must offer 'concrete particulars' to substantiate his or her claim." (quoting *Meiri*, 759 F.2d at 998).  Therefore, the Court grants Defendants summary judgment on Ebadi's Title VII discrimination claim related to her termination.

### 2.  NYSHRL and NYCHRL

Summary judgment in Defendants' favor is also warranted as to Ebadi's termination-based discrimination claim under the NYSHRL and NYCHRL because, for the reasons stated above, no reasonable jury could find that gender played any role in Ebadi's termination. Summary judgment on an NYSHRL and NYCHRL claim is appropriate when "'the record establishes as a matter of law' that discrimination *or* retaliation 'played no role'" in an employer's decision to terminate plaintiff's employment.  *Ya-Chen Chen*, 805 F.3d at 76 (alteration adopted) (quoting *Mihalik,* 715 F.3d at 110 n.8); *see also Harriott v. Success Acad.*

21

*Charter Schs.*, No. 22-cv-03037 (ER), 2024 WL 757478, at *11 (S.D.N.Y. Feb. 23, 2024) ("Even under [the NYCHRL's] more lenient standard, summary judgment in favor of the employer may still be appropriate if there is no evidence of discriminatory motive before the [c]ourt.") (collecting cases). "Without evidence of discriminatory animus, [a] [p]laintiff cannot sustain" a claim under the NYSHRL or NYCHRL. *Hodgson*, 2013 WL 840874, at *5. That is the case here. *See supra* Part I.B.1. Therefore, Defendants are granted summary judgment as to Plaintiff's NYSHRL and NYCHRL discrimination claims related to her termination.

## II.    Retaliation Claims

Turning to Plaintiff's retaliation claims, "[r]etaliation claims brought pursuant to Title VII, the NYSHRL, and the NYCHRL are all evaluated under the [aforementioned] *McDonnell Douglas* three-step burden-shifting framework." *Green v. Mount Sinai Health Sys., Inc.*, No. 17-cv-03999 (VEC), 2019 WL 4392691, at *3 (S.D.N.Y. Sept. 12, 2019), *aff'd*, 826 F. App'x 124 (2d Cir. 2020) (summary order); *Maynard v. Montefiore Med. Ctr.*, No. 18-cv-08877 (LAP), 2021 WL 396700, at *6 n.8 (S.D.N.Y. Feb. 4, 2021) (collecting cases). Ebadi claims that: (1) Diamond Standard terminated her in retaliation for her complaints about pay discrimination; and (2) the post-termination lawsuit against her was filed in retaliation for her decision to file an EEOC complaint. Opp. at 15-19. Diamond Standard argues that summary judgment is warranted because the evidence cannot support a finding of *prima facie* retaliation based on either action, and there are legitimate, non-retaliatory reasons for the termination and lawsuit, such that no reasonable jury could find pretext. Br. at 23-29. The Court agrees with Diamond Standard.

A.    **Termination**

1.   **Title VII**

To start, Ebadi has not pointed to evidence that supports a *prima facie* retaliation claim under Title VII regarding her termination. To establish a prima facie case of retaliation under Title VII, the plaintiff must show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Hicks*, 593 F.3d at 164 (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)). Ebadi claims that her complaints to Kenny, Campbell, and Betts regarding pay discrimination constituted a protected activity under Title VII. Opp. at 15-17. Diamond Standard argues that Ebadi's complaints did not constitute statutorily protected activity and that there is insufficient evidence to demonstrate causation. Br. at 23; Reply at 9.

Contrary to Defendants' contention, the Court finds that there is evidence of protected activity, because "informal protests of discriminatory employment practices, including making complaints to management" are protected activities under Title VII. *Sumner v. U.S. Postal Serv.,* 899 F.2d 203, 209 (2d Cir. 1990). At the very least, Ebadi testified that she complained about gender discrimination to her supervisor, Campbell, during their July 2022 meeting even though Campbell disputes this. *See* Pl. Counterstatement 56.1 ¶ 110; Bracero Decl., Ex. 2, Pl. Dep. at 376-78.

However, there is insufficient evidence of a causal connection between the protected activity and Ebadi's termination. Causation can be shown either "directly, through evidence of retaliatory animus directed against the plaintiff by the defendant" or "indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar

23

conduct." *Dedewo v. CBS Corp.*, No. 18-cv-09132 (AKH), 2022 WL 1031588, at *5 (S.D.N.Y. Apr. 5, 2022) (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)). Direct evidence of causation generally requires a plaintiff to "show that the particular decision maker who took adverse action against the plaintiff had knowledge of the plaintiff's protected activity." *Fox v. Starbucks Corp.*, No. 19-cv-04650 (AJN), 2021 WL 4155029, at *6 (S.D.N.Y. Sept. 13, 2021), *aff'd*, No. 21-2531, 2023 WL 407493 (2d Cir. Jan. 26, 2023) (summary order); *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 859 (S.D.N.Y. 2013) ("[T]he lack of evidence indicating knowledge of particular individual agents can doom a plaintiff's ability to show the fourth element (causation)."). Alternatively, "causation may be inferred in part 'by showing that the protected activity was closely followed in time by the adverse action.'" *Fox*, 2021 WL 4155029, at *6 (quoting *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010)). Here, there is insufficient evidence on the record to support a finding of causation based on either direct or indirect evidence.

It is undisputed that Kinney made the decision to terminate Ebadi's employment. *See* Jt. 56.1 ¶ 70. Ebadi does not present any evidence that Kinney knew about the complaints, and Kinney testified that he did not know about them. Def. 56.1 ¶ 128; Abitabilo Aff., Ex. 3, Kinney Dep. at 164-65. Ebadi does not present any evidence to counter this testimony, and "conclusory statements, speculation, or general attacks on [Kinney's] credibility" cannot defeat summary judgment. *Coats v. Leavitt*, No. 04-cv-07570 (DLC), 2006 WL 225585, at *4 (S.D.N.Y. Jan. 31, 2006); *see, e.g.*, *Concha v. Purchase Coll. State Univ. of New York*, No. 17-cv-08501 (JCM), 2019 WL 3219386, at *10 (S.D.N.Y. July 17, 2019) ("Plaintiff has not established a causal connection between the protected activity and his termination" because defendants "were unaware of" the protected activity.); *Deshpande v. McDonough*, No. 22-cv-08097 (JCM), 2024 WL 5226856, at *6 (S.D.N.Y. Dec. 26, 2024) (finding plaintiff "cannot establish causation

24

simply by asserting that [the decisionmaker] knew about Plaintiff's [protected activity]"), *appeal filed*, No. 25-142 (2d Cir. Jan. 21, 2025).

Ebadi argues that decisionmakers did have knowledge of her complaints because Ebadi complained to Betts and Campbell, and they supported terminating her on July 26, 2022.  Opp. at 16 (citing Pl. 56.1 ¶ 23).  However, Kinney elected at that time not to terminate Ebadi's employment and to give her another chance.  Def. 56.1 ¶ 116.  It is undisputed that Kinney, acting alone, later decided to fire Ebadi after the events on July 27, 2022.  Jt. 56.1 ¶ 70.

The record evidence likewise does not support an inference of causation based on the temporal proximity between Ebadi's complaints and the termination of her employment because "her own intervening misconduct severs the chain of causation."  *Dedewo*, 2022 WL 1031588, at *7.  "An intervening event between the protected activity and the adverse employment action may defeat the inference of causation where temporal proximity might otherwise suffice to raise the inference."  *Nolley v. Swiss Reinsurance Am. Corp.*, 857 F. Supp. 2d 441, 462 (S.D.N.Y. 2012) (collecting cases), *aff'd sub nom.*, *Nolley v. Swiss Re Am. Holding Corp.*, 523 F. App'x 53 (2d Cir. 2013) (summary order).  Here, Ebadi's employment was terminated in the same month as her July 2022 complaint to Campbell regarding discrimination.  Pl. 56.1 ¶¶ 61-62; Jt. 56.1 ¶ 71.  However, it is undisputed that Kinney, who had previously decided not to terminate Ebadi's employment and to give her another chance, thereafter decided to fire Ebadi because she arrived late, missed a team huddle, and had an exchange with Bauman that led to him declining to attend a teambuilding event.  Jt. 56.1 ¶¶ 68-70.  Given that these intervening events break the temporal chain, and that Kinney did not even know about Ebadi's complaints regarding gender discrimination, temporal proximity is not enough to support a *prima facie* case of causation.  *See, e.g.*, *Dedewo*, 2022 WL 1031588, at *7 (finding that temporal proximity cannot demonstrate causation at summary judgment when plaintiff's intervening misconduct "sever[ed] the chain of

causation"); *Smith v. City of New York*, 385 F. Supp. 3d 323, 346 (S.D.N.Y. 2019) (holding that a plaintiff did not show causation, despite closer temporal proximity, when decision-makers did not know about the plaintiff's complaint).

Even if Ebadi established a *prima facie* case, Diamond Standard's justification for firing her — that she was not collaborative with her co-workers and was at times hostile to them — is a legitimate, non-retaliatory reason for termination. *See, e.g.*, *Ulrich v. Moody's Corp.*, No. 13-cv-00008 (VSB), 2017 WL 1232709, at *16 (S.D.N.Y. Mar. 31, 2017) (finding that "performance issues and insubordination" were "legitimate, non-retaliatory reasons" for terminating an employee), *aff'd*, 721 F. App'x 17 (2d Cir. 2018) (summary order). Beyond temporal proximity, Ebadi does not point to any evidence that would indicate that this reason is pretextual. *See Abrams v. Dep't. of Pub. Safety*, 764 F.3d 244, 254-55 (2d Cir. 2014) ("[T]emporal proximity is insufficient to satisfy [plaintiff's] burden to bring forward some evidence of pretext," and "plaintiff must come forward with some evidence of pretext in order to raise a triable issue of fact."). Moreover, Diamond Standard expressed concerns about Ebadi's difficulties working with others prior to her July 2022 complaints to Campbell, including Bauman's May 30, 2022 email to Betts expressing concerns about Ebadi's behavior towards Patino, s*ee* Jt. 56.1 ¶ 50, and Campbell's June 7, 2022 email to Nigel Frank discussing concerns about Ebadi's employment, *see id.* ¶¶ 60-61; Abitabilo Aff., Ex. 19. Thus, Ebadi does not point to any evidence that could support a finding that the reasons given for her termination were pretextual or that Diamond Standard was motivated by retaliatory animus. *See, e.g.*, *Newton*, 2022 WL 4619111, at *10 (finding no genuine dispute of fact regarding discriminatory termination claim "given the overwhelming evidence in the record that [plaintiff] was fired for committing a 'major infraction' of [defendant's] policy"). As such, Defendants are entitled to summary judgment as to Ebadi's Title VII claim for retaliation relating to her termination.

26

### 2. NYSHRL and NYCHRL

For similar reasons, Ebadi's termination-based retaliation claims under the NYSHRL and NYCHRL also fail. To assert a retaliation claim under the NYCHRL and NYSHRL, a plaintiff must demonstrate that she "took an action opposing [her] discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Livingston v. City of New York*, 563 F. Supp. 3d 201, 250 (S.D.N.Y. 2021) (quoting *Mihalik*, 715 F.3d at 112). "Even under this 'less demanding standard,' a 'plaintiff still must establish that there was a causal connection between [her] protected activity and the employer's subsequent action, and must show that a defendant's legitimate reason for [her] termination was pretextual or motivated at least in part by an impermissible motive.'" *Id.* at 246 (quoting *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 449 (S.D.N.Y. 2018)). As discussed, Ebadi has not proffered evidence demonstrating causation given that Kinney was unaware of her complaints about gender discrimination and Ebadi's own intervening misconduct severed the chain of causation. *See supra* Part II.A.1; *see e.g.*, *Livingston*, 563 F. Supp. 3d at 250-51 (granting summary judgment to the employer because the plaintiff was "unable to demonstrate any 'causal link'" for his Title VII, NYCHRL, and NYSHRL retaliation claims). Temporal proximity is also not enough. *See, e.g.*, *Zabar v. N.Y.C. Dep't of Educ.*, No. 18-cv-06657 (PGG), 2024 WL 4289641, at *16 (S.D.N.Y. Sept. 24, 2024) ("[E]vidence of temporal proximity alone is not enough to demonstrate retaliation under the NYCHRL." (quoting *Forrester v. Corizon Health, Inc.*, 752 F. App'x 64, 66 (2d Cir. 2018) (summary order))) (collecting cases); *Mazur v. N.Y.C. Dep't of Educ.*, 621 F. App'x 88, 90 (2d Cir. 2015) (affirming summary judgment for the defendants because the plaintiff failed to establish "the requisite causal link between [her] complaints and any alleged retaliatory action," and the record also contained "non-retaliatory reasons for any action taken"); *E.E.O.C. v. Bloomberg L.P.*, 967 F.

Supp. 2d 816, 862 (S.D.N.Y. 2013) ("Even under a mixed-motives analysis under the NYCHRL, [plaintiff] has not offered any evidence other than temporal proximity to suggest any retaliatory animus on the part of [defendant].").

### B.    Post-Termination Lawsuit

#### 1.  Title VII

Finally, Defendants are entitled to summary judgment as to Ebadi's retaliation claim under Title VII based on Defendants' post-termination lawsuit.  Again, Ebadi has not pointed to evidence that demonstrates causation, a required element for any retaliation claim.

Ebadi points only to the fact that Diamond Standard's lawsuit occurred approximately three months after she filed her EEOC complaint.  However, the lawsuit was contemplated and threatened well before any EEOC complaint was filed.  Kinney emailed Ebadi on August 1, 2022, alleging that she deleted work files in violation of criminal and civil law, and advising that the company was "reserving all rights."  Jt. 56.1 ¶ 77.  Diamond Standard thereafter investigated the scope of the deletions, engaging an accounting consultant to assist with the recovery and reconstruction of the work product Ebadi deleted.  Def. 56.1 ¶ 135; Abitabilo Ex. 3, Kinney Dep. at 150; Kinney Decl. ¶ 15.  Even though Diamond Standard ultimately filed its lawsuit against Ebadi on March 7, 2023, Jt. 56.1 ¶ 79, three months after Ebadi filed her EEOC complaint on December 6, 2022, *id.* ¶ 78, she had already been put on notice regarding possible litigation four months before she filed her EEOC complaint.

"[W]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Bacchus v. N.Y.C. Dep't of Educ.*, 137 F. Supp. 3d 214, 243 (E.D.N.Y. 2015) (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)); *see Nunez v. New York State Dep't of Corr. & Cmty. Supervision*, No. 14-cv-06647

(JMF), 2015 WL 4605684, at *14 n.5 (S.D.N.Y. July 31, 2015) ("It is well established, however, that 'mere continuation of an adverse employment condition . . . does not, without more, logically support an inference that the protected activity prompted retaliation.'" (quoting *Fenner v. News Corp.,* No. 09-cv-09832 (LGS), 2013 WL 6244156, at *26 (S.D.N.Y. Dec. 2, 2013))), *aff'd sub nom.*, *Nunez v. Lima*, 762 F. App'x 65 (2d Cir. 2019) (summary order).  Here, Diamond Standard's threatened pursuit of its claims against Ebadi began well before her protected activity of filing the EEOC complaint.  Moreover, even after the complaint was filed, Diamond Standard did not sue Ebadi for three more months.  This further undermines causation.  *See Fox*, 2021 WL 4155029, at *7 ("[C]ourts in the Second Circuit have . . . 'consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation.'" (quoting *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007))); *Robinson v. De Niro*, 739 F. Supp. 3d 33, 116 (S.D.N.Y. 2023) ("[M]ost courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference." (quoting *De Figueroa v. New York*, 403 F. Supp. 3d 133, 157 (E.D.N.Y. 2019)).  No reasonable jury could infer causation from these facts.

Ebadi points next to Kinney's refusal to accept her help in recovering the documents and his testimony regarding why he agreed to dismiss Diamond Standard's lawsuit against Ebadi: "I accomplished what I wanted to, you don't damage my company without me doing something about it." *See* Opp. at 19 (quoting Pl. 56.1 ¶ 108).  Diamond Standard was not required to accept help from a terminated employee to recover files that she improperly deleted and against whom they were contemplating legal action.  Moreover, Kinney's testimony supports, rather than undermines, a finding that Defendants sued Ebadi for deleting work-related documents and damaging the company, rather than because of any protected activity by Ebadi.  *See* Abitabilo Aff., Ex. 3, Kinney Dep. at 162-63 (Kinney testifying that he was referring to the damage done

by Ebadi's deletion of the work-related files and confirming that he was not referring to the EEOC complaint). For all of these reasons, Defendants are entitled to summary judgment as to Ebadi's Title VII retaliation claim based on the post-termination lawsuit.

### 2. NYSHRL and NYCHRL

Likewise, Defendants' post-termination lawsuit cannot support a claim for retaliation under the NYSHRL and NYCHRL. "[A]n employer's continuation of a course of conduct that had begun before the employee complained does not constitute retaliation because, in that situation, there is no causal connection between the employee's protected activity and the employer's challenged conduct." *Melman v. Montefiore Med. Ctr.*, 946 N.Y.S.2d 27, 42 (N.Y. App. Div. 2012); *accord Bacchus*, 137 F. Supp. 3d at 247; *see also Europe v. Equinox Holdings, Inc.*, No. 20-cv-07787 (JGK), 2022 WL 4124763, at *10 (S.D.N.Y. Sept. 9, 2022) (finding that plaintiff did not establish a *prima facie* case of NYCHRL retaliation when the adverse employment action was the "culmination of continuous progressive discipline" (quoting *Cadet-Legros v. N.Y. Univ. Hosp. Ctr.*, 21 N.Y.S.3d 221, 230 (N.Y. App. Div. 2015))). Again, here, Defendants had identified misconduct by Ebadi and informed her of potential anticipated legal action well before she filed any EEOC complaint. Thus, Defendants are entitled to summary judgment as to Ebadi's retaliation claims based on Defendants' post-termination lawsuit under the NYSHRL and NYCHRL.

**CONCLUSION**

For all of these reasons, the Court GRANTS Defendants' motion for summary judgment and dismisses all claims. The Clerk of the Court is respectfully directed to terminate the motion at Dkt. 36 and close the case.

Dated: March 3, 2026
New York, New York

SO ORDERED.

_Jennifer Rochon_
JENNIFER L. ROCHON
United States District Judge